UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ESPERANZA GALLARDO, MARGARITO
VAZQUEZ, and GERARDO DOMINGUEZ, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

 -against-

3MK CLEANERS, INC. d/b/a ON TIME
CLEANERS and BRIAN KIM,

        Defendants.
------------------------------------------------------------------X

**COLLECTIVE ACTION**

**COMPLAINT**

  Plaintiffs Esperanza Gallardo, Margarito Vazquez, and Gerardo Dominguez (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendants 3MK Cleaners, Inc. d/b/a On Time Cleaners ("On Time") and Brian Kim (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

  1. Plaintiffs, former laundry workers and a counterman at On Time, regularly worked over forty hours per workweek but received a fixed weekly salary or straight-time pay that did not include overtime pay.

  2. When Plaintiff Gallardo, a single mother, requested emergency leave to take care of her feverish, one-year-old baby, Defendants fired her.

  3. Plaintiffs bring this action on behalf of themselves and all similarly situated non-exempt laundry workers and counter attendants ("Non-Exempt Workers") of On Time to recover unpaid overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair

Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), and the Wage Theft Prevention Act ("WTPA").

4. Plaintiff Gallardo also seeks compensatory and punitive damages, attorney's fees, and costs for Defendants' violations of the anti-discrimination provisions of New York City Human Rights Law ("NYCHRL") and the New York City State Human Rights Law ("NYSHRL").

## JURISDICTION

5. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. Pursuant to Section 8-502(c) of the New York City Administrative Code, Plaintiff shall, within ten days of its filing, serve a copy of this Complaint to designated city representatives.

## VENUE

7. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because the events giving rise to Plaintiffs' claims arose at On Time, which is located and does business in this district.

## THE PARTIES

**Plaintiffs**

8. Esperanza Gallardo ("Gallardo") resides in Queens, New York.

9. Gallardo worked at On Time as a washer from approximately January 23, 2017 to March 8, 2018.

10. Margarito Vazquez ("Vazquez") resides in Queens, New York.

11. Vazquez worked at On Time as a counter attendant from approximately March 27, 2016 to July 2017.

2

12. Vazquez was known by the nickname "Alvaro" during his employment at On Time.

13. Gerardo Dominguez ("Dominguez") resides in Queens, New York.

14. Dominguez worked at On Time as an ironer from approximately November 2016 to November 2017.

**Defendants**

15. Defendant 3MK Cleaners, Inc. owns and operates as On Time Cleaners, a laundry located at 477 3rd Avenue, New York, New York 10016, that provides dry cleaning, laundering, and tailoring services directly to customers and to other businesses that lack the facilities and capability to launder clothing on-site.

16. On Time is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

17. On Time has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

18. In the three years preceding the filing of this Complaint, On Time's annual gross volume of sales exceeded $500,000.

19. Throughout Plaintiffs' employment with Defendants, Defendant Brian Kim ("Kim") owned and managed On Time.

20. Throughout Plaintiffs' employment, Kim had and exercised power over personnel decisions at On Time, including disciplining, hiring, and firing employees, setting their wages, and otherwise controlling the terms and conditions of their employment.

21. For instance, Kim signed and distributed Plaintiffs' paychecks.

3

22.     Kim, along with a store manager, Kenny, decided to change Plaintiff Dominguez's wage rate from salary to hourly.

23.     Throughout Plaintiffs' employment, Kim was regularly present and working on the On Time's premises.

24.     Kim regularly directed On Time employees, including Plaintiffs, in how to conduct their daily work duties.

25.     Kim exercised sufficient control over On Time's operations to be considered Plaintiffs' employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

**Plaintiffs' Hours and Pay**

26.     Throughout their employment at On Time, Plaintiffs regularly worked over forty hours per workweek.

27.     Throughout her employment with Defendants, from January 23, 2017 to March 8, 2018, Gallardo worked as a laundry worker on a regular schedule of Monday through Friday, from approximately 8:00 a.m. to 4:30 p.m., and Saturday, from approximately 8:00 a.m. to 3:00 p.m., with a daily thirty-minute lunch break, totaling approximately 46.5 hours per workweek.

28.     From January 23, 2017 to approximately July 2017, Defendants paid Gallardo $10.50 per hour for all hours worked per week, including those over forty.

29.     From approximately July 2017 to the end of her employment, Defendants paid Gallardo a fixed weekly salary of $500.

30.     From approximately March 2016 to March 2017, Vazquez worked as a counter attendant on a regular schedule of Monday through Friday, from approximately 7:00 a.m. to 7:00 p.m., and Saturday from approximately 8:00 a.m. to 5:30

4

p.m., with a daily thirty-minute lunch break, totaling approximately 66.5 hours per workweek.

31.   During this initial period, Defendants paid Vazquez a fixed weekly salary of $700, in equal parts by personal check and in cash.

32.   From approximately March 2017 to in or about May 2017, Vazquez worked as a counter attendant on a regular schedule of Monday through Wednesday, Friday and Saturday, from approximately 7:00 a.m. to 5:30 p.m., with a daily thirty-minute lunch break, totaling approximately 50 hours per workweek.

33.   From approximately May 2017 to the end of his employment in July 2017, Vazquez worked as a counter attendant on a regular schedule of Monday through Saturday, from approximately 7:00 a.m. to 5:30 p.m., with a daily thirty-minute lunch break, totaling approximately 60 hours per workweek.

34.   From approximately March 2017 to the end of his employment, Defendants paid Vazquez a straight-time pay of $13.00 for all hours worked per week, including those over forty.

35.   Throughout his employment, from approximately November 2016 to November 2017, Dominguez worked as a clothing ironer on a regular schedule of Monday through Saturday, from approximately 8:00 a.m. to between 5:00 p.m. and 7:00 p.m., with a daily thirty-minute lunch break, totaling approximately 51 to 63 hours per workweek.

36.   Initially, from approximately November 2016 through February 2017, Defendants paid Dominguez a fixed weekly salary of $630.

37.   From approximately March 2017 through May 2017, Defendants paid Dominguez a fixed weekly salary of $700.

5

38. From approximately June 2017 to in or about July 2017, Defendants paid Dominguez a fixed weekly salary of $750.

39. Thereafter, Defendants began paying Dominguez, as well as packagers and other ironers, an hourly rate that remained the same for all hours worked, *i.e.* straight-time pay.

40. From in or about July 2017 to the end of Dominguez's employment in November 2017, Defendants paid Dominguez $13.00 for all hours worked per week, including those over forty.

41. Defendants failed to pay Plaintiffs at one and one-half (1 ½) times their regular hourly rate for all hours worked over forty in a workweek.

42. Defendants failed to furnish Plaintiffs with a wage notice at any time throughout their employment.

43. Defendants failed to furnish Plaintiffs with wage statements at the end of each pay period throughout their employment.

**Collective Action Allegations**

44. Plaintiffs bring this action on behalf of themselves and all similarly situated persons who have worked as Non-Exempt Workers (*i.e.*, non-exempt counter attendants, launderers, ironers, and packagers) at On Time within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

45. The FLSA Collective consists of approximately twelve Non-Exempt Workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages and other monies by paying them on a salary or straight-time basis.

6

46. Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have had work schedules consisting of over forty hours per workweek, have performed similar laundering duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

47. Defendants are aware or should have been aware that the FLSA required them to pay Non-Exempt Workers an overtime premium for hours worked in excess of forty per workweek.

48. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

49. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated Non-Exempt Workers can be readily identified and located through Defendants' records. The similarly situated Non-Exempt Workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

**Defendants' Discrimination Against Gallardo**

50. Gallardo is the sole caretaker for her one-year-old child.

51. On March 7, 2018, Kenny, an On Time manager, informed Gallardo that her child's daycare called to inform her that her child was sick with a fever and needed to be taken home.

52. Gallardo requested and was granted permission to leave work early that day to collect her child.

53. Gallardo returned to work the next day, March 8, at her regularly-scheduled start time.

54. Later that day, Gallardo informed Kenny that she had finished her daily duties and requested permission to leave at 3:00 p.m. to pick up her child, who was still suffering symptoms from fever, from daycare.

55. Kenny told Gallardo that she was troublesome because she put her child before her work, to which Gallardo stated that she had no choice as a single mother but to pick up her child.

56. Kenny denied Gallardo's request to leave early and immediately terminated her for making the request.

57. When Dominguez left work early to see his wife who was in the hospital without prior permission, Kenny did not terminate or otherwise discipline Dominguez.

58. Kenny often made derisive comments about single mothers, asking why they asked for time off when female workers without children did not make such requests.

59. Kenny terminated Gallardo because she was the sole caregiver for her young child.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

60. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

61. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates for all of the hours that they worked in excess of forty per workweek.

62. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 207(a), and employed Plaintiffs and the FLSA Collective.

8

63. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

64. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

65. Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

66. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

67. Pursuant to the NYLL and supporting New York State Department of Labor ("NYDOL") Regulations, Defendants were required to pay Plaintiffs and the Non-Exempt Workers one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

68. Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting NYDOL Regulations, and employed Plaintiffs and the Non-Exempt Workers.

69. Defendants failed to pay Plaintiffs and the Non-Exempt Workers overtime wages equal to one and one-half (1½) times their regular hourly rates of pay per hour worked in excess of forty per workweek.

70. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Non-Exempt Workers overtime wages.

9

71. Due to Defendants' willful violations of the NYLL, Plaintiffs and the Non-Exempt Workers who opt in are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**THIRD CLAIM**
**(New York Labor Law – Failure to Provide Wage Notices)**

72. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

73. The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

74. Defendants failed to furnish to Plaintiffs and the Non-Exempt Workers at the time of hiring, and whenever there was a change to Plaintiffs' and the Non-Exempt Workers' rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

75. Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Non-Exempt Workers who opt in are entitled to recover from Defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000,

reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

### FOURTH CLAIM
### (New York Labor Law – Failure to Provide Accurate Wage Statements)

76. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

77. Defendants failed to furnish Plaintiffs and the Non-Exempt Workers, with each wage payment, a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

78. Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs and the Non-Exempt Workers who opt in are entitled to recover from the Defendants liquidated damages of $250.00 per workday, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

### FIFTH CLAIM
### (NYSHRL – Familial Status Discrimination)

79. Plaintiff Gallardo repeats and realleges all foregoing paragraphs as if fully set forth herein.

80. The NYSHRL makes it unlawful for covered employers, such as Defendants, "because of an individual's . . . familial status . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment." N.Y. Exec. Law § 296(1)(a).

11

81. Plaintiff was Defendants' employee within the meaning of the NYSHRL. N.Y. Exec. Law § 292(6).

82. During Gallardo's employment, Kenny, as an On Time manager, was Defendants' agent.

83. Defendants willfully and unlawfully discriminated against Plaintiff by terminating her employment because she has a minor child and/or is a single parent.

84. As a result of Defendants' discriminatory conduct, Gallardo suffered and continues to suffer damages and is entitled to declaratory and injunctive relief, compensatory damages, and reasonable attorneys' fees and costs. N.Y. Exec. Law § 297.

## SIXTH CLAIM
### (NYCHRL – Caregiver Status Discrimination)

85. Plaintiff Gallardo repeats and realleges all foregoing paragraphs as if fully set forth herein.

86. The NYCHRL requires that covered employers, such as Defendants, to "because of the . . . caregiver status. . . of any person: . . . (2) . . . discharge from employment such person." N.Y.C. Admin. Code § 8-107(1.)

87. Defendants employed Plaintiff within the meaning of the NYCHRL.

88. Gallardo was giving direct and ongoing care for her minor child at the time of her termination.

89. During Gallardo's employment, Kenny, as an On Time manager, was Defendants' agent.

90. Defendants willfully and unlawfully discriminated against Plaintiff by terminating her employment because she has a minor child and/or is a single parent.

91.     As a result of Defendants' discriminatory conduct, Gallardo suffered and continues to suffer damages, and is entitled to declaratory and injunctive relief, compensatory damages, and reasonable attorneys' fees and costs.

92.     Defendants' discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

a.      designate this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b.      declare that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

c.      declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

d.      declare that Defendants' violations of the FLSA and NYLL were willful;

e.      declare that the acts and practices complained of herein are in violation of the NYSHRL and NYCHRL;

f.      enjoining and permanently restraining these violations of the NYSHRL and NYCHRL;

  g. directing Defendants to reinstate Plaintiff Gallardo in the position Plaintiff would be in but for its discriminatory and unlawful acts, and to make Plaintiff whole for all earnings she would have received but for Defendants' discriminatory and unlawful treatment, including, but not limited to, back pay, front-pay, and other lost employment benefits;

  h. award Plaintiffs and the FLSA Collective unpaid overtime pay, other unpaid wages, and liquidated damages as permitted by law pursuant to the FLSA, the NYLL, and their supporting and interpretive regulations;

  i. award Plaintiffs and the Non-Exempt Workers who opt in statutory penalties arising out of Defendants' failure to provide Plaintiffs and the FLSA Collective with wage notices;

  j. award Plaintiffs and the Non-Exempt Workers who opt in statutory penalties arising out of Defendants' failure to provide Plaintiff and the FLSA Collective with accurate wage statements;

  k. award Plaintiffs and the Non-Exempt Workers who opt in pre- and post-judgment interest;

  l. award Plaintiffs and the FLSA Collective reasonable attorneys' fees and costs of the action pursuant to the NYLL and FLSA;

  m. awarding Plaintiff Gallardo compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation;

  n. awarding Plaintiff Gallardo punitive damages for Defendants' intentional disregard of and reckless indifference to her rights; and

o. award such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 20, 2018

PECHMAN LAW GROUP PLLC

By: _____
Louis Pechman
Lillian M. Marquez
Pechman Law Group PLLC
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
marquez@pechmanlaw.com
*Attorneys for Plaintiffs and the Putative FLSA Collective*